MICHAEL L. TUSKEN, Esq. (SBN 175715)
LAW OFFICES OF MICHAEL L. TUSKEN
1510 W Whittier Blvd # 42
La Habra, CA 90631
Tel:   (562) 365-9465
Fax:   (562) 252-8529
Michael@TuskenLaw.com

Attorney for PLAINTIFF ALIREZA ROGHAEE

## IN THE UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALIREZA ROGHAEE<br><br>Plaintiff,<br><br>v.<br><br>MARKWAYNE MULLIN, SECRETARY, UNITED STATES DEPARTMENT OF HOMELAND SECURITY; JOSEPH B. EDLOW, DIRECTOR OF USCIS<br><br>Defendants. | ) Case No.: 2:26-cv-4160<br>)<br>) **COMPLAINT FOR WRIT IN**<br>) **THE NATURE OF**<br>) **MANDAMUS.**<br>)<br>) **COMPLAINT UNDER THE**<br>) **APA 5 U.S.C. § 704 (REVIEW**<br>) **OF FINAL AGENCY ACTION):**<br>) **5 U.S.C. § 706(2) (ARBITRARY**<br>) **AND CAPRICIOUS), AND 5**<br>) **U.S.C. § 553 (NOTICE AND**<br>) **COMMENT PROCEDURES**<br>) **BEFORE PROMULGATING**<br>) **SUBSTANTIVE RULES)**<br>) |

## INTRODUCTION

Plaintiff ALIREZA ROGHAEE (hereinafter, "Plaintiff" or "ALI") against Defendants MARKWAYNE MULLIN, SECRETARY OF THE DEPARTMENT OF HOMELAND SECURITY (hereinafter "DHS") and JOSEPH B. EDLOW,

-1-

DIRECTOR of the UNITED STATES CITIZENSHIP AND IMMIGRATION SERVICES (hereinafter "USCIS") to compel the USCIS, an agency of DHS, to make a decision regarding the I-765 Application for Employment Authorization filed by Plaintiff with USCIS **on October 6, 2025**, based on his application for adjustment of status as the dependent spouse of NEGAR HOSSEINZADEH KOUCHEHBAGHI (hereinafter "NEGAR"). **The USCIS Administrative Receipt Number of the I-765 Application for ALI is IOE0934099955 (Administrative File Number: A141-333-315), and the USCIS Administrative Receipt Number of the I-765 for NEGAR is IOE0934099952 (Administrative File Number: A233-731-357)**. Negar's I-765 work authorization is valid from November 21, 2025, to November 20, 2030. Plaintiff also is seeking determination under the APA that the Policy Memorandum PM-602-0192 referenced in paragraph 20 *infra*, and Policy Memorandum PM-602-0194, referenced in paragraph 22 *infra,* be deemed inapplicable and inoperative as to Plaintiff.

## STATEMENT OF FACTS

1.      NEGAR is an Iranian national and the beneficiary of an approved I-140 Immigrant Petition for Alien Worker as an Individual with an Advanced Degree whose education and skills are deemed in the National Interest of the United States, pursuant to § 203(b)(2) of the Immigration and Nationality Act (8 U.S.C. § 1153(b)(2)), as stated on the I-140 Approval Notice dated January 10, 2024. (*See* concurrently filed Declaration of NEGAR ("Negar Decl.") at ¶ 6 and its **Exhibit 1**). Although not a party to this action, Negar is the primary immigrant from whom ALI derives his benefits.

2.      ALI, the husband of NEGAR, is an Iranian national currently living in Los Angeles, California. He is a derivative-beneficiary of her approved I-140. Ali was born on June 8, 1989, in Esfahan, Iran. (*See* concurrently filed Declaration of

-2-

ALI ("Ali Decl.") at ¶ 4)

3.      ALI and NEGAR married on June 28, 2018, in Esfahan, Iran.  They currently live together with their U.S. citizen child Liam Roghaee, born in Los Angeles, CA on September 13, 2023.  (*See* Ali Decl. and Negar Decl. each at ¶ 7 and its **Exhibit 2**)

4.      As detailed below, NEGAR and ALI have met all the requirements under INA 8 U.S.C. § 1255 and therefore are eligible to adjust their immigration status to that of lawful permanent residents.

5.      NEGAR was admitted to the United States on July 4, 2022, on a J-1 non-immigrant visa as a research scholar.  She currently is a full-time self-funded Visiting Scholar through a program sponsored by the Terasaki Institute for Biomedical Innovation in Woodland Hills, CA (hereinafter, "TIBI").  She has maintained lawful non-immigrant visa status since then.   (*See* Negar Decl. at ¶¶ 4, 8 and its **Exhibits 3-4**)

6.      ALI currently is in J-2 non-immigrant status, which will expire May 31, 2026. He was admitted to the United States on a J-2 visa on July 4, 2022, and has maintained lawful non-immigrant visa status since then.  (*See* Ali Decl. at ¶¶ 4-5).  ALI received employment authorization attendant to his J-2 visa status which will expire May 31, 2026.

## I.   NEGAR and ALI Fall Under the National Interest Waiver

7.      NEGAR earned her M.Sc. from Amir Kabir University of Technology (Tehran Polytechnic) in Iran.  She received an M.S. in textile engineering (nanofiber structures) from Amirkabir University of Technology in 2017 and received the physical M.S. diploma in 2018.  (*See* Negar Decl. at ¶ 9 and copies of her diploma and transcripts and a detailed advisory evaluation of her educational credentials attached at its **Exhibit 5**.) As such, NEGAR is qualified as a member of the professions holding an advanced degree.

8.      NEGAR is conducting research and overseeing specialized instruments at TIBI.  She is part of a research team that is dedicated to developing personalized therapeutic options for organ failure, cardiovascular disease, and cancer using micro and nanoscale technologies.  The team is directed by Dr. Yangzhi Zhu, who previously reported to Dr. Khademhosseini when he was TIBI CEO.  (*See* Dr. Khademhosseini's letter, which was submitted as part of Negar's I-140 package, at Negar Decl. at ¶ 10 and its **Exhibit 6**.)

USCIS has accepted the high value of NEGAR's work by approving the National Interest Waiver Petition on her behalf.  As noted in her recommendation letter from the former TIBI CEO,

> [her] work directly addresses pressing challenges in the healthcare system, providing targeted and efficient solutions through advanced materials. Her utilization of nanofibers enhances precision in healthcare devices and diagnostics with unparalleled accuracy.  Drawing on the adaptability and biocompatibility of soft materials, Ms. Hosseinzadeh Kouchehbaghi's work revolutionizes medical implants, leading to improved patient outcomes and reduced post-surgical complications. Her innovative application of hydrogels opens new frontiers in wound care, tissue engineering, and controlled drug release. Ms. Hosseinzadeh Kouchehbaghi's research advancements have not only resulted in a substantial reduction in healthcare costs and complications but also stand at the forefront of global biomedical innovation, attracting investments and setting new standards for the industry.

(*Id.*)

-4-

9.     NEGAR has co-authored at least 18 articles published in peer-reviewed professional and scientific journals as stated in her profile on Google Scholar as of April 18, 2026.  (*See* Negar Decl. at ¶ 12 and a copy of which is attached to the Negar Decl. at its **Exhibit 8**.) (https://scholar.google.com/citations?user=VL4DLyYAAAAJ&hl=en) **Those articles have been cited 450 times as of April 18, 2026**.  Again, USCIS, when approving the I-140 Petition on behalf of NEGAR was cognizant of and accepted her immense value to the national interest of the United States, when approving the I-140 Petition on that basis.

10.     Attesting to the significance of NEGAR's work since coming to the United States, her Google Scholar profile went from being cited 19 times, to 450 citations now. (*See* Negar Decl. at ¶ 13 and a copy of that profile attached at its **Exhibit 9**.)

## II. ALI's I-765 Application for Employment Authorization was Submitted Concurrently with Negar's on October 6, 2025

11.     Following approval of her I-140, NEGAR filed an I-485 Application to Register Permanent Residence or Adjust Status together with, among other documents, an I-765 Application for Employment Authorization.  (*See* Negar Decl. at ¶ 14 and a copy of the I-765 Receipt Notice, bearing receipt number IOE0934099952, dated October 9, 2025, acknowledging a "Received Date" of October 6, 2025, attached at its **Exhibit 10**.)

12.     ALI, as a derivative beneficiary of NEGAR, submitted his I-485 and I-765 concurrently with NEGAR on October 6, 2025.  (*See* Ali Decl. at ¶ 9 and a copy of the I-765 Receipt Notice, bearing receipt number IOE0934099955, dated October 9, 2025, acknowledging a "Received Date" of October 6, 2025, attached as its **Exhibit 4**.)  (ALI's receipt number is only three digits later than NEGAR's.)

13.    ALI and NEGAR each received an ASC Appointment Notice sent to their home setting a biometrics appointment for November 4, 2025, at 10:00 a.m. at the USCIS San Fernando, CA, Application Support Center ("ASC").  They appeared together for the appointment that day.  (*See* Ali Decl. at ¶ 10 and Negar Decl. at ¶ 16 and copies of the notices, stamped by USCIS staff acknowledging the biometric processing, attached as **Exhibit 5** to Ali Decl. and **Exhibit 12** to Negar Decl.)

14.    NEGAR's I-765 was approved on November 22, 2025.  (*See* Negar Decl. at ¶ 17 and a copy of (i) the I-765 Approval Notice identifying her Class as C09 due to a pending I-485 application, and (ii) her Employment Authorization Document ("EAD"), also bearing category/class C09, attached at its **Exhibit 13**.)

### III. ALI is at Immediate Risk of Losing his Job

15.    ALI's current Employment Authorization Document ("EAD") expires on May 31, 2026, concurrently with his J-2 non-immigrant status.  (*See* Ali Decl. at ¶ 12 and copies of his current EAD and immediate prior EAD, both bearing Category/class C05 attached as its **Exhibit 7**.)

16.    ALI presently is employed by Disney Studios (The Walt Disney Company) in Burbank, CA as a network engineer where he has been working at Disney as a network engineer in March 2024.  (*See* Ali Decl. at ¶ 13)

17.    ALI is at immediate risk of losing his job.  He received an email from Disney's I-9 Service Center dated March 2, 2026, which stated, among other things, "[f]ailure to present proof of continued work eligibility on or before 05/31/2026 may result in separation the day following expiration of the U.S. work authorization."  (*See* Ali Decl. at ¶ 14 and copies of that email along with its attachment, "List of Acceptable Documents [to prove work authorization]," attached as **Exhibit 8** to the Ali Decl.)

**IV. As a Derivative Beneficiary ALI is Entitled as a Matter of Law to the Same Status and Consideration as Primary Petitioner NEGAR**

18.    ALI, as a derivative beneficiary spouse who is accompanying the principal applicant, NEGAR, is entitled to the same benefits as the primary spouse under 8 USC § 1153(d), which explicitly states that the spouse of a principal beneficiary is entitled "to the same status and order of consideration as the principal beneficiary."

19.    On December 2, 2025, U.S.C.I.S. issued Policy Memorandum PM-602-0192, titled "Hold and Review of all Pending Asylum Applications and all USCIS Benefit Applications Filed by Aliens from High-Risk Countries" ("PM-602-0192").  A true and correct copy of PM-602-0192 is attached hereto as **Exhibit 1** and incorporated herein by this reference.  The memorandum states in pertinent part:

Effective immediately, this memorandum directs U.S. Citizenship and Immigration Services (USCIS) personnel to:

[…]

2. Place a hold on pending benefit requests[2] for aliens from countries listed in *Presidential Proclamation (PP) 10949, Restricting the Entry of Foreign Nationals To Protect the United States From Foreign Terrorists and Other National Security and Public Safety Threats*,[3] pending a comprehensive review, regardless of entry date[4]

20.    Iran is among the countries listed in PP 10949.

21.    On January 1, 2026, U.S.C.I.S. issued Policy Memorandum PM-602-0194, titled "Hold and Review of USCIS Benefit Applications Filed by Aliens from Additional High-Risk Countries" ("PM-602-0194"). A true and correct copy of PM-602-0194 is attached hereto as **Exhibit 2** and incorporated herein by this reference.  The memorandum states in pertinent part:

-7-

Effective immediately, this memorandum directs U.S. Citizenship and Immigration Services (USCIS) personnel to:

1. Place a hold[2] on all pending benefit applications, for aliens[3] listed[4] in Presidential Proclamation (PP) 10998, *Restricting and Limiting the Entry of Foreign Nationals To Protect the Security of the United States*,[5] pending a comprehensive review, regardless of entry date.

   [...]

[...] The following are exceptions to the adjudication hold:

   8. Benefit requests filed by aliens whose entry would serve a United States national interest;.

## **PARTIES**

22.    Plaintiff ALI is an applicant for work authorization based on his application for adjustment of status as the dependent spouse of NEGAR HOSSEINZADEH (hereinafter "NEGAR").  ALI currently resides in Los Angeles County, California.

23.    Defendant MARKWAYNE MULLIN (hereinafter "MULLIN") is the Secretary of the Department of Homeland Security (hereinafter "DHS") of the United States and oversees the USCIS which is a component of DHS.  Defendant is sued in his official capacity and as agency head.

24.    Defendant JOSEPH B. EDLOW is the Director of the USCIS, a component of DHS, and oversees USCIS. The USCIS is mandated to adjudicate employment authorization applications and derives authority to do so from MULLIN.  Defendant is sued in his official capacity and as agency head.

///

///

# JURISDICTION

25.     Jurisdiction in this case is proper under 28 U.S.C. Sections 1331 and 1361.  Relief is requested pursuant to said statutes. Although 8 C.F.R. § 274a.13(a)(1) gives USCIS discretion over the "approval" of certain applications for employment authorization, USCIS's discretion as to whether to "grant or deny" an application for employment authorization does not give USCIS discretion to *withhold* a decision on such applications, and therefore, this Court has jurisdiction to hear the instant complaint. As noted by other Courts within the Ninth Circuit, "the government has a non-discretionary duty to adjudicate [petitions for adjustment of status] within a reasonable period of time" and that courts have jurisdiction to review the Government's failure to do so. *Khan v. Johnson*, 65 F. Supp. 3d 918, 924-25 and n. 4 (C.D. Cal. 2014) and cases cited therein; *see also Islam v. Heinauer*, 32 F. Supp. 3d 1063, 1069 (N.D. Cal. 2014) ("Indeed, the government has a non-discretionary duty to adjudicate [petition for adjustment of status] within a reasonable period of time" and "[t]o hold otherwise would be to sanction the perpetual delay of governmental obligations that are clearly mandated by law" (internal quotation marks and citations omitted)). **8 C.F.R. § 274a.13(a)(1) is a regulation, not a statute, and it does not insulate USCIS's hold policy from judicial review under 8 U.S.C. § 1252(a)(2)(B)(ii).** By its terms, subsection (B)(ii) concerns only statutory (not regulatory) bases for discretion. "[B]oth clauses [of § 1252(a)(2)(B)] convey that Congress barred court review of discretionary decisions only when Congress itself set out the Attorney General's discretionary authority in the statute." *Kucana v. Holder,* 558 U.S. 233, 247 (2010); *Mugomoke*, 2012 WL 113800, at *4 ("the authority to not act on an application is not conferred by any statute").  As the Supreme Court recognized in *Kucana*, reading section 1252(a)(2)(B)(ii) to bar judicial review of administrative decisions made discretionary by regulation would create a situation

-9-

where, "the Executive would have a free hand to shelter its own decisions from abuse-of-discretion appellate court review simply by issuing a regulation declaring those decisions "discretionary." Such an extraordinary delegation of authority cannot be extracted from the statute Congress enacted." 558 U.S. at 236. *See also, Wilkinson v. Garland*, 601 U.S. 209 (2024), discretionary decisions are reviewable when intertwined with questions of law. Section 1252(a)(2)(D), grants jurisdiction to review "questions of law."

## VENUE

26.     Venue is proper in this court, pursuant to 28 U.S.C. Section 1391(e)(1)(c), in that this is an action against an officer of an agency of the United States in her official capacity, brought in the Central District of California where the Plaintiff resides, as no real property is involved in the action.

## EXHAUSTION OF REMEDIES

27.     Plaintiff has exhausted all administrative remedies and, after trying to get an adjudication, was unable to do so.  The Policy Memoranda, referenced *supra*, constitute a "final agency action" *See Amer. Federation of State County and Municipal Employees, AFL-CIO v. United States Office of Management and Budget*, 807 F. Supp. 3d 1004, 1032 (N.D. Cal. 2025); *also* 5 U.S.C. § 704. Under the operative legal test, an agency action is final only if it is: (1) the consummation of an agency's decision-making process, and (2) an action by which rights or obligations have been determined or from which legal consequences will flow. *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997); The Supreme Court has long taken a "pragmatic" approach to determining whether an agency action is final. *San Francisco Housing Ass'n v. Dep't of the Interior,* 946 F.3d 564, 578 (9th Cir. 2019) (quoting *U.S. Army Corps. of Engineers v. Hawkes Co.*, 578 U.S. 590, 599 (2016)).

28.     The first prong under *Bennett*, is satisfied since the Policy Memoranda do not purport to interpret existing rules but instead create new rules and procedures.  The second prong of the *Bennett* test is also met, since the adjudicatory hold put in place by the Policy Memoranda prevents final adjudication of Plaintiff's application, *i.e.,* a final decision on whether to approve, deny, or dismiss his application.  As a result, the Policy Memoranda affect Plaintiff's rights. Without final adjudication of and approval of his Form I-765 application, Plaintiff will lose his job and be unable to work in the United States. "Courts have regularly determined that [the second prong of the finality test] is satisfied when an indefinite pause is imposed by an agency." *New York v. Trump*, 811 F. Supp. 3d 215, 234 (D. Mass. 2025) (citing cases and holding that 60-day pause in issuance of wind energy authorizations pending assessment of federal wind leasing and permitting practices was a final agency action); *see also Doe v. Trump*, 288 F. Supp. 3d 1045, 1070 (W.D. Wash. 2017) (holding that memorandum issued by agencies including DHS that suspended for at least 90–days the entry of refugees who are nationals of or residents of certain countries was a final agency action because "whether the Agency Memo produces a 'suspension' or an indefinite delay, [it] has significant real-world impacts on Plaintiffs' various situations.").  "[E]ven short delays can have cascading effects" on applicants. *Doe v. Trump*, 288 F. Supp. 3d at 1070. Here, similarly, it does Plaintiff little practical good if some processing of his applications continues if USCIS places an indefinite hold on any decision on the I-765 application. At stake is "not simply the loss of employment" but the fact that the hold "prevents [Plaintiffs] from continuing [their] employment or from pursuing any other employment." *Bowser*, 2026 WL 555624, at *6. Here, "[the agency's] position was definitive and the legal consequences for [Plaintiffs] were real," which are "the hallmarks of APA

finality." *San Francisco Herring Ass'n v. Dep't of the Interior*, 946 F.3d 564, 581 (2019) (citations omitted).

## FIRST CAUSE OF ACTION

## MANDAMUS REGARDING ISSUANCE OF DECISION AS TO PLAINTIFFS' I-765 APPLICATION

29. Plaintiff hereby incorporates paragraphs 1 through 28 as enumerated above.

30. Defendants have not responded to Plaintiff's request to adjudicate his I-765 application. Defendants have offered no explanation as to why Plaintiff's wife's I-765 was adjudicated and approved by USCIS although he applied with her and underwent biometrics at the same time as she did, all before the Policy Memoranda were announced and instituted. Plaintiff avers that the only reason he did not receive approval of his I-765 and his EAD card when his wife did, was because of misprocessing or clerical error on the part of USCIS.

31. More than 180 days have passed without USCIS adjudicating Plaintiff's I-765 application. There is nothing more for the Plaintiff to do but wait for USCIS to adjudicate his application.

32. In arguendo, even if the Policy Memoranda are deemed to be operative in the instant matter, Plaintiff is entitled to the exception of National Interest in accordance with 8 U.S.C. § 1153(d) through his spouse, the primary beneficiary of the I-140 Petition under the National Interest Waiver. PM-602-0194 provides no rules or guidelines as to how to request the National Interest exception, which must be interpreted consistent with existing law. Plaintiff avers that since his wife has already been recognized under the National Interest Waiver, under 8 U.S.C. § 1153(d), he is entitled "to the same status and order of consideration as the principal beneficiary," and thus, he automatically qualifies for this exception

without any further submissions.

33.    A complaint for Writ in the Nature of Mandamus is appropriate because there is no other remedy at law.

34.    Plaintiff has been forced to retain the services of an attorney to pursue the instant matter.

## SECOND CAUSE OF ACTION

## COMPLAINT UNDER THE APA 5 U.S.C. § 704 (REVIEW OF FINAL AGENCY ACTION): 5 U.S.C. § 706(2) (ARBITRARY AND CAPRICIOUS)

35.    Plaintiff hereby incorporates paragraphs 1 through 34 as enumerated above.

36.    Defendants did not meaningfully consider the reliance interests, to wit, immigration benefits of the applicants harmed by their actions, nor did they explain in a reasoned manner why the indefinite hold set forth in the Policy Memoranda is appropriate and consistent with the Presidential Proclamations cited as justification.

37.    The APA authorizes courts to hold unlawful and set aside agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). "The touchstone of arbitrary and capricious review under the APA is reasoned decision-making." *All for the Wild Rockies v. Petrick*, 68 F.4th 475, 493 (9th Cir. 2023) (internal quotation marks and citations omitted). "That means an agency's action can only survive arbitrary or capricious review where it has articulate[d] a satisfactory explanation for its action including a rational connection between the facts found and the choice made." *Id.* (internal quotation marks and citations omitted). "[I]f the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be

ascribed to a difference in view or the product of agency expertise," the agency's decision-making is insufficiently reasoned. *Id.* at 492 (quoting *Motor Vehicle Mfrs. Ass'n of the U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)). Important aspects that the agency must consider include "the costs as well as the benefits" of the agency action. *State Farm*, 463 U.S. at 54.

38.     The hold component of the Policy Memoranda extends far beyond EO 14161, Proclamation 10949, or Proclamation 10998, which the Policy Memoranda purport to implement. The Proclamations focused on restricting the *entry* of aliens from certain countries deemed to be high-risk, reciting the President's authority under INA 212(f) to suspend or restrict the entry of aliens from those countries. However, the adjudicatory hold extends far beyond that context because it applies to nearly all pending benefit requests from applicants such as the Plaintiff *who has already been admitted to and living the United States for an extended period*. An Executive Order or Presidential Proclamation that calls for greater restrictions on the *entry* of aliens from certain countries cannot serve as a reasonable justification for an indefinite hold on adjudication of applications for immigration benefits by aliens who have already been lawfully admitted. *Pacito v. Trump*, 169 F.4th 895, 937 (9th Cir. 2026) (affirming district court's conclusion that decision to terminate domestic resettlement services, ostensibly based on Executive Orders for a pause in foreign development assistance, was likely arbitrary and capricious).

39.     Defendants' decision to withhold adjudications pursuant to the Policy Memoranda, therefore, was arbitrary and capricious.

### THIRD CAUSE OF ACTION
### COMPLAINT UNDER 5 U.S.C. § 553 (NOTICE AND COMMENT PROCEDURES BEFORE PROMULGATING SUBSTANTIVE RULES)

40.     Plaintiff hereby incorporates paragraphs 1 through 39 as enumerated above.

-14-

41.     The Policy Memoranda were adopted without following required procedures. "Under the APA, a federal administrative agency is required to follow prescribed notice-and-comment procedures before promulgating substantive rules." *Colwell v. Dep't of Health & Human Servs.*, 558 F.3d 1112, 1124 (9th Cir. 2009). The requisite procedures include publishing notice of proposed rules in the Federal Register and then allowing interested persons an opportunity to participate in the rulemaking through submission of written data, views, or arguments. *See* 5 U.S.C. § 553. "These procedures are designed to assure due deliberation of agency regulations and foster the fairness and deliberation that should underlie a pronouncement of such force." *East Bay Sanctuary Covenant v. Trump,* 932 F.3d 742, 775 (9th Cir. 2018) (internal quotation marks and citations omitted).

42.     The rules promulgated in the Policy Memoranda are "substantive," and therefore subject to the APA's notice-and-comment requirements, because they "create rights, impose obligations, or effect a change in existing law pursuant to authority delegated by Congress." *Yesler Terrace Cmty. Council v. Cisneros*, 37 F.3d 442, 449 (9th Cir. 1994). In the area of immigration policy, "[c]ourts require agencies to engage in notice and comment rulemaking when implementing policy changes with substantive consequences for refugees and other immigrants." *Doe v. Trump*, 288 F. Supp. 3d 1073 (W.D. Wash. 2017).

43.     The Policy Memoranda have direct and appreciable consequences for Plaintiff because they have imposed an indefinite hold on the adjudication of Plaintiff's I-765 application.

44.     These Policy Memoranda do NOT constitute a general statement of policy.  The Ninth Circuit has established that to fall within the "policy statements" exception to rulemaking procedures, a general statement of policy (1) must "operate only prospectively," and (2) "must not establish a binding norm or be finally determinative of the issues or rights ... but must instead leave [agency]

-15-

officials free to consider the individual facts in the various cases that arise." *Mada-Luna v. Fitzpatrick*, 813 F.2d 1006, 1014 (9th Cir. 1987) (internal quotation marks and citations omitted).   *See also Gill v. U.S. Dep't of Just.*, 913 F.3d 1179, 1186 (9th Cir. 2019) ("The critical factor to determine whether a directive announcing a new policy constitutes a legislative rule or a general statement of policy is 'the extent to which the challenged directive leaves the agency, or its implementing official, free to exercise discretion to follow, or not to follow, the announced policy in an individual case.'") (alterations omitted) (quoting *Colwell v. Dep't of Health & Human Servs.*, 558 F.3d 1112, 1124 (9th Cir. 2009)).

45.    In the instant matter, the adjudicative hold announced in the Policy Memoranda was not purely prospective but was applied to applications pending at that time, including the one filed by the Plaintiff before the Policy Memoranda were announced.

46.    The Defendants, by not providing for a Notice and Comment period before adopting the Policy Memoranda violated 5 U.S.C. § 553 as to Notice and Comment Procedures before promulgating substantive rules.

**PRAYER**

WHEREFORE Plaintiff respectfully prays that Defendants be cited to appear herein, and that upon due consideration, the Court enter an order as follows:

1.    Requiring Defendant USCIS to issue a decision as to Plaintiff's pending I-765 application within 10 days, and to approve such application prior to May 31, 2026.

2.    Requiring Defendant USCIS to issue and deliver the EAD Card within seven (7) days of the I-765 approval, but in any event, have the EAD Card issued and delivered such that Plaintiff receives the EAD Card on or before May 31, 2026.

3.    In the alternative, in the event that USCIS asserts or determines that for any reason it cannot issue a physical EAD card within seven (7) days of approval of the I-765 and have it delivered such that Plaintiff receives the EAD Card on or before May 31, 2026, in addition to issuing a I-765 approval notice, that USCIS issue a document stating that: (i) Ali is authorized to work in the United States for the period as authorized, and (ii) said document has the equivalent full force and effect as an EAD card, and that (ii) any employer may consider and rely upon said document to the full extent as it would an EAD card.

4.    Awarding Plaintiff's reasonable attorneys' fees pursuant to EAJA, and costs.

5.    Granting such other relief at law or in equity as the Court deems appropriate.

April 20, 2026                    Respectfully submitted,

Law Offices of Michael Tusken

     /s/ Michael Tusken
MICHAEL TUSKEN
Attorney for Plaintiff

-17-